UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL CHAMPINE, individually and on behalf of his minor daughter, I.J.C.,<br><br>      Plaintiff,<br>v.<br><br>CHRIS RYAN, an individual, BOISE SCHOOL DISTRICT, and DOES I-X, individuals and/or entities of unknown origin,<br><br>      Defendants.<br><br>MEG CHAMPINE, individually, and as natural legal guardian for the Minor Child Plaintiff, IJC,<br><br>      Plaintiff,<br>v.<br><br>BOISE SCHOOL DISTRICT; FAIRMONT JUNIOR HIGH, and CHRISTOPHER RYAN and DOES I-X, individuals and/or entities of unknown origin,<br><br>      Defendants. | Case No. 1:23-cv-00338-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are four motions: (1) Plaintiff Michael Champine's Motion to

MEMORANDUM DECISION AND ORDER - 1

Compel Testimony of Daniel Skinner (Dkt. 51); (2) Defendants Christoppher Ryan, Fairmont Junior High, and Boise School District's (collectively, the "District") 30(d)(3) Motion to Limit Deposition (Dkt. 54); (3) Plaintiff Michael Champine's Motion to Modify Scheduling Order (Dkt 59); and (4) Plaintiff Michael Champine's Motion for Leave to Amend Complaint (Dkt. 61). Plaintiff Meg Champine has joined in Plaintiff Michael Champine's Motion to Compel Testimony (Dkt. 52).

Upon review, and for the reasons set forth below, the Motion to Compel Testimony is GRANTED; the 30(d)(3) Motion to Limit Deposition is DENIED; the Motion to Modify Scheduling Order is GRANTED pursuant to stipulation; and the Motion for Leave to Amend Complaint is GRANTED.[1]

## II. BACKGROUND

The general background of this case is set forth in a prior Decision and Order of this case. Dkt. 46. It will not be repeated here. However, the background relevant to the pending motions will be briefly set forth. This case involves allegations of repeated sexual abuse of I.J.C. by District employees while I.J.C. was a student at Fairmont Junior High School. Dkt.4. Plaintiffs allege that the sexual abuse was not properly investigated by the District and there was no statutory report made to the authorities. As part of the discovery process, Plaintiffs took the deposition of Daniel Skinner, who is an attorney and was an employee of the District's during the relevant times of this case.

In 2007, Skinner was in private practice but worked on matters for the District.

---

[1] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

MEMORANDUM DECISION AND ORDER - 2

During that time, Skinner often investigated allegations of inappropriate conduct. In 2020, Skinner became in-house counsel for the District. At the same time, he also became a member of the District's executive team dealing with the day-to-day management of the District. He continued to conduct investigations of alleged inappropriate conduct between district employees and students. He testified that his investigations as in-house counsel were the same as when he was independent counsel. He would start with the school's principal to get the scope of the allegations and figure out who relevant witnesses may be. He would then talk to the complaining party and/or the complaining party's parents. Next, he would talk to any witnesses. He would conclude by talking to the District employee who was the subject of the investigation.

    The deposition testimony makes clear that while Skinner was independent or outside counsel, he never investigated a case of abuse or neglect for the District that involved employee and student conduct. Dkt. 51-3, p. 17, lines 21-25 and p. 18, lines 1-5. After Skinner went in-house, he did not do any Title IX investigations alleging inappropriate conduct between staff and students because no one had opted to go down the Title IX path. Dkt. 51-3, p. 29, lines 12-25; p. 30, lines 1-7. Thus, his investigations would be outside of Title IX. Any investigations Skinner did while serving in the dual roles of attorney and executive team member would be investigations of misconduct between students or investigations of misconduct between an employee and a student outside of Title IX.

    Skinner testified that Jason Hutchinson, Director of Human Resources for the District also performs some of these investigations. Skinner estimated that he conducts

MEMORANDUM DECISION AND ORDER - 3

80% of the investigations and Hutchinson conducts 20% of them. Skinner testified that he did the internal investigation related to Phil Hiller's inappropriate conduct towards I.J.C.

Michael Champine's counsel asked Skinner what knowledge he gained from the Hiller incident when he first received information about the allegation. Dkt. 51-3, lines 12-15. At that point in the deposition, the District's counsel objected claiming that the requested information might be protected by the attorney-client privilege and the work product doctrine. After a short discussion between counsel, the District's attorney allowed Skinner to identify who he spoke to in his investigation. Skinner testified that the initial communication to investigate came from the executive team and that he then spoke directly with Chris Ryan (principal at Fairmont Jr. High School); the Plaintiffs, Michael Champine and Meg Champine (parents of I.J.C.); and Scott Crandell.[2] Dkt. 51-3. Lines 4- 12.

Michael Champine's counsel then asked Skinner what he discovered in his conversations with Meg Champine. The District's attorney[3] objected based on attorney-client privilege and the work product doctrine. After further discussion between counsel, the deposition was adjourned to get the Court's ruling on the objections.

### III. ANALYSIS

**A. PLAINTIFFS' MOTION TO COMPEL DEPOSITION (Dkt. 51) AND DEFENDANTS' MOTION TO LIMIT DEPOSITION (Dkt. 54)**

These two motions are competing motions. In his motion, Plaintiff Michael

---

[2] Crandell was a social worker at Fairmont Jr. High School. He committed suicide on December 17, 2022, following allegations that he had also sexually abused I.J.C.
[3] All references herein to the District includes Defendant Ryan and Fairmont Junior High School since the same attorney represents all of these defendants.

MEMORANDUM DECISION AND ORDER - 4

Champine seeks an order compelling Daniel Skinner to answer deposition questions regarding investigations he did relative to allegations of inappropriate conduct between District employees and a student. In their motion, Defendants seeks a protective order affirming Skinner does not have to answer deposition questions regarding investigations he did relative to allegations of inappropriate conduct between district employees and a student.

The District claims those questions delve into matters protected by the attorney-client privilege and/or the work product doctrine. The Plaintiffs claim that, although Skinner is an attorney and is the District's in-house counsel, his investigations do not satisfy the elements of the attorney-client privilege or the work product doctrine.

1. *Attorney-Client Privilege*

    a. <u>Legal Standard</u>

The attorney-client privilege can be a difficult privilege to disentangle. However, certain legal standards and principles are clear. When a case is before the Court based on federal subject matter jurisdiction, federal law governs the availability and scope of the attorney-client privilege, not state law. Federal Rule of Evidence 501; *Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Ariz.,* 881 F.2d 1486, 1492 (9th Cir. 1989). This remains true even when the Complaint alleges both federal and state claims. *Anderson v. City of Rialto,* 2017 WL 10562686 (C.D. Cal. 2017); *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 459 (N.D. Cal. 1978).

The burden of proving that the privilege applies lies with the party asserting the privilege. *U.S. v. Graf,* 610 F.3d 1148, 1156 (9th Cir. 2010). The Attorney-client privilege

is "narrowly and strictly construed." *Dolby Lab'ys Licensing Corp. v. Adobe, Inc.,* 402 F. Supp. 3d 855, 863 (N.D. Cal. 2019). The privilege is strictly construed because it impedes full and free discovery of the truth. *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). The privilege protects communications, not underlying facts or evidence. *Upjohn Co. v. U.S.,* 449 U.S. 383, 395 (1981).The fact that a person is an attorney does not make all communications with that person privileged. *Ruehle,* 583 F.3d at 607. Communications between an entity and its outside counsel are presumed to be made for the purpose of seeking legal advice. *U.S. v. ChevronTexaco Corp.,* 241 F. Supp. 2d 1065, 1073 (N.D. Cal. 2002) quoting *U.S. v. Chen,* 99 F.3d 1495, 1501 (9th Cir. 1996). However, communications between an entity and its own in-house attorneys do not carry that same presumption. *Id.* at 1076. In-house counsel may operate in a purely or primarily business capacity in connection with many entity endeavors as opposed to legal matters. *Id.* Courts have recognized that where a communication involves in-house counsel and may have a business purpose, the burden of establishing that a document is privileged is higher than it would be for outside counsel. *City of Roseville Employees' Retirement System v. Apple,* 2022 WL 3083000, at *9 (N.D. Cal. 2022). This is based on the recognition that in-house counsel frequently serve as integral players in business decisions or activities. *Id.* The burden for privilege associated with in-house counsel is "a clear-showing that the 'speaker' made the communications for the purpose of obtaining or providing legal advice." *Id.*

The essential elements of the attorney-client privilege are:

(1) . . . legal advice of any kind is sought
(2) from a professional legal advisor in his capacity as such,
(3) the communications relating to that purpose,

MEMORANDUM DECISION AND ORDER - 6

     (4) made in confidence
     (5) by the client,
     (6) are at this instance permanently protected
     (7) from disclosure by the client or by the legal advisor,
     (8) unless the protection is waived.

*Stevens v. BYU-I,* 2018 WL 2974388 (D. Idaho 2018) (quoting *Admiral Ins. Co.*, 881 F.2d at 1492 (citation modified)).

     b.  <u>Analysis</u>

The District notes that the attorney-client privilege only protects confidential information that "passes between attorney and client for the purpose of giving or obtaining legal advice." Dkt. 53, at 7 (quoting *Mendez v. St. Alphonsus Regional Med. Center, Inc.,* 2014 WL 3406015 at *2 (D. Idaho 2014)). The Plaintiffs note that the District cannot show that the information was for the purpose of giving or obtaining legal advice. Instead, the Plaintiffs argue the investigation was a fact-finding mission whether performed by a lawyer or by HR.

In support of its position, the District cites *Upjohn Co. v. U.S.,* 449 U.S. 383 (1981) and *U.S. v. Rowe,* 96 F.3d 1294 (9th Cir. 1996). However, these cases are both distinguishable from the present case. In *Upjohn*, the United States Supreme Court was addressing "important questions concerning the scope of the attorney-client privilege in the corporate context and the applicability of the work-product doctrine in proceedings to enforce tax summonses." 449 <u>U.S. at</u> 386. However, the Court further noted that "[t]he communications at issue were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate supervisors in order to secure legal advice from counsel." *Id.* at 394. Finally, the Court stated that the employees who were questioned were

sufficiently aware that they were being questioned in order that the corporation could obtain legal advice. *Id.* Upjohn had issued a written questionnaire that clearly indicated the legal implications of the investigation, and the employees were told the communications were highly confidential. Lower courts have referred to this type of written information as an *Upjohn* warning. *See, e.g., B.L. v. Schuhmann,* 2020 WL 6293582 (W.D. Ky. 2020) (" while the Court recognizes that the use of the *Upjohn* warnings mitigates in favor of a conclusion that Louisville Metro was seeking legal advice, it does not overcome the other facts discussed above including the language of the Agreement by which Dickinson Wright was retained.").

In *Rowe,* the Ninth Circuit ruled that the attorney-client privilege can apply between a company and its in-house counsel. 96 F.3d at 1296. The Court also held that, "in this case, it is clear that litigation was anticipated from day one." *Id.* Finally, the Ninth Circuit stated that the question is not whether the in-house counsel was engaging in fact-finding or rendering legal advice (lawyering). Fact-finding can be for the purpose of giving legal advice. Instead, the question is whether the in-house counsel was engaging in fact-finding in order to give legal advice. Specifically, the Court stated:

> Prior to *Upjohn,* "in claiming the protection of the attorney-client privilege [t]he corporation ha[d] the burden of showing that the communication was made for the purpose of securing *legal* advice . . . ." Where the attorney was asked for business (as opposed to legal) counsel, no privilege attached. *Upjohn* did not eliminate this distinction. What it did do is make clear that fact-finding which pertains to legal advice counts as "professional legal services."

96 F.3d at 1297 (citation modified).

In *U.S. ex rel. Parikh v. Premera Blue Cross,* 2006 WL 3733783 (W.D. Wash.

MEMORANDUM DECISION AND ORDER - 8

2006), the Court recognized that under *Upjohn* and *Rowe* a corporation may invoke the attorney-client privilege to shield communications made by the corporation's employees to an attorney in connection with an internal legal investigation. First, the *Parikh* court stated:

> Analysis of attorney-privilege issues is often complicated when an attorney plays dual roles within a corporation. As one court has observed:
>
> Because in-house counsel may play a dual role of legal advisor and business advisor, the [attorney-client] privilege will apply only if the communication's primary purpose is to gain or provide legal assistance. Business communications are not protected merely because they are directed to an attorney, and communications at meetings attended or directed by attorneys are not automatically privileged as a result of the attorney's presence. Rather, the corporation must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.

*Parikh,* at *5 (citing *Kramer v. Raymond Corp.,* 1992 WL 122856 at *2 (E.D.Pa. May 29, 1992) (citation modified); *see also In re Sealed Case*, 737 F.2d 94, 99 (D.C.Cir.1984) (party asserting attorney-client privilege for communications by in-house attorney who had duties outside the "lawyer's sphere" must make a "clear showing" that attorney was acting in a "professional legal capacity").

The *Parikh* court went on to explain:

> *Upjohn* plainly suggests that in order for the privilege to apply, an employee must be aware that the communication to counsel is being made to enable the corporation to obtain legal advice. The *Upjohn* Court specifically noted that "the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice" and "even those interviewees not receiving a questionnaire were aware of the legal implications of the interviews." 449 U.S. at 394-95. As the Ninth Circuit noted in *Admiral Insurance Co. v. U.S. District Court for the District of Arizona,* 881 F.2d 1486, 1492 (9th Cir.1989), the *Upjohn* Court "held that the privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the

MEMORANDUM DECISION AND ORDER - 9

scope of the employee's corporate duties *and the employee is aware* that the information is being furnished to enable the attorney to provide legal advice to the corporation."

*Id*. at *5.

*Parikh* involved communications between employees and an attorney who also served as a corporate vice president. The Court and parties recognized that the attorney/vice president had dual roles and that sometimes he acted as legal counsel but sometimes he did not. The Court denied the application of the attorney-client privilege because there was nothing in the record to suggest the employees knew the attorney/vice president was gathering information to give legal advice.

The District claims that this "primary purpose" test no longer exists. However, in *Greer v. County of San Diego,* the Ninth Circuit recently addressed this issue again. It held that "the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications." 127 F.4th 1216, 1224 (9th Cir. 2025).[4] Under the primary-purpose test, a court looks at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or other non-legal advice. *Id.* A dual-purpose communication can only have a single "primary" purpose. *Id.*

In looking at the facts in this case, the Court reminds the parties that the burden is on the District to make a clear showing of facts necessary to support its claim that the attorney-client privilege applies. Additionally, because Skinner was in-house counsel,

---

[4] *Greer* was decided on February 10, 2025, but was not cited by either party even though this motion was not filed until July 28, 2025. *Greer* is important because the District argues that the primary purpose analysis does not apply here but the Ninth Circuit has clearly held it does apply to attorney-client privilege claims for any dual-purpose communications.

MEMORANDUM DECISION AND ORDER - 10

there is no presumption that his investigation was to give legal advice. In fact, the opposite appears true in that any investigations were done either by Skinner or by Hutchinson, a non-lawyer in HR.

The relevant facts here are that Skinner was in-house counsel for the District when he performed his investigation related to alleged improprieties between District employees and I.J.C.; he was also a member of the District's executive team, dealing with day-to-day management of the District. There is nothing in the record before this court to suggest that Skinner's investigations were for the purpose of providing legal advice rather than dealing with the day-to-day management of the District. No retention letter or scope of duties was provided; no mention of *Upjohn* warnings being given to people Skinner communicated with during his investigations; no lawsuit or legal proceedings had begun; and no evidence that the persons Skinner spoke to were aware that the information they provided was to enable the attorney to provide legal advice to the District. All the Court can derive from the record is that Skinner asked people questions about what they knew of the situation. The District has failed to meet its burden regarding the attorney-client privilege. Skinner's deposition regarding his investigation cannot be limited due to the attorney-client privilege. Skinner must answer deposition questions regarding that investigation.[5]

//
//

---

[5] In response to the District's Motion to Limit Deposition, the Plaintiffs argue that the crime-fraud exception applies. The Court has ruled that the attorney-client privilege does not apply to questions regarding Skinner's investigations into allegations that school district employees acted inappropriately towards a student. This makes the crime-fraud exception unnecessary and moot. It will not be discussed here.

MEMORANDUM DECISION AND ORDER - 11

2. *Work Product Doctrine*

    a. <u>Legal Standard</u>

The work product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *U.S. v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011). This is consistent with Federal Rule of Civil Procedure 26(b)(3), which states, "Ordinarily, a party may not discovery documents and tangible things that are prepared in anticipation of litigation or for trial . . . ." There are three elements to the work product doctrine: (1) a document or tangible thing; (2) prepared in anticipation of litigation, and (3) by or for a party or his representative. *Stauss v. Credit Lyonnais, S.A.,* 242 F.R.D. 199, 230 (E.D. N.Y. 2007). The burden is on the party claiming the work product protection to prove the applicability of the doctrine. *Stevens*, 2020 WL 7366318 (citing *In re Excel Innovations, Inc.,* 502 F.3d 1086 (9th Cir. 2007)).

Typically, the attorney work product doctrine applies to documents and tangible things. At the same time, the Court recognizes that the United States Supreme Court first recognized the common law attorney work product in *Hickman v. Taylor,* 329 U.S. 495 (1947) and described it more recently like this: "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area with which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238 (1975). This suggests that under the common law, the work product doctrine may extend beyond documents to anything that seeks the mental process of an attorney preparing for litigation.

    b. <u>Analysis</u>

The District makes the following argument while discussing the work product

doctrine: "Defendants' counsel also properly invoked the work product doctrine to protect Mr. Skinner's privileged mental impressions while working on legal matters for the District." Dkt. 53, at 10. However, as discussed above, there is nothing in the record to indicate that Skinner was working "on legal matters" relative to the questions posited by Plaintiffs' counsel. There was no litigation to prepare for, no demand letter sent, no Complaint filed. HR often did the very type of investigation that Skinner did in this case. There is not even the presumption that Skinner's investigation was to give legal advice because he was not independent counsel, but in-house counsel, at the time.

The District also relies on *Republic of Ecuador v. Mackay,* for the proposition that "the work product of the lawyer is shown in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." 742 F.3d 860, 866 (9th Cir. 2014) (citation modified). The problem with this reliance is that *Republic of Ecuador* was a case that had been in litigation for decades and the expert documents at issue were created long after the lawsuits were initiated, making it clear that they dealt with mental impressions while working on legal matters. This case does not present a similar situation. At least, not as it pertains to Skinner's investigation prior to any litigation. The work product doctrine does not preclude deposition questions relative to Skinner's investigation.

The Plaintiffs' motion to compel answers to deposition questions regarding Skinner's investigation of alleged inappropriate conduct between school district employees and a student is granted. The questions must be answered. Defendants' motion for a protective order against those questions is denied.

MEMORANDUM DECISION AND ORDER - 13

## B. PLAINTIFF MICHAEL CHAMPINE'S MOTION TO MODIFY SCHEDULING ORDER (Dkt. 59)

Plaintiff Micheal Champine seeks to modify the Scheduling Order for good cause to extend the deadline to amend pleadings due to recently discovered evidence.

Originally, Defendants opposed the motion to modify the scheduling order. Dkt. 63. However, on November 3, 2025, the parties submitted a Stipulation to Vacate Case Management Deadlines. Dkt. 71. That Stipulation vacates the case management deadlines until the Court has ruled on the pending motions regarding the deposition of Skinner and the completion of that deposition. Therefore, pursuant to the stipulation, this motion is granted.

## C. PLAINTIFF'S MOTION TO AMEND COMPLAINT (Dkt. 61)

Plaintiff Michael Champine filed a Motion for Leave to Amend Complaint pursuant to Federal Rule of Civil Procedure 15. Dkt. 61. Defendants filed an Objection to the motion. Dkt. 64. Previously, the parties stipulated that the deadline for amending pleadings was August 1, 2025. This deadline was adopted in the Court's Scheduling Order. Dkt. 50. Later, the parties stipulated that the case management deadlines were vacated until the Court ruled on the motions surrounding Skinner's deposition and the completion of that deposition.

It is unclear from the written Stipulation whether it applies to the deadline for amending pleadings. This is because the only "case management deadlines" identified in the Stipulation are regarding discovery deadlines. Dkt. 71, at 3. However, upon review of the pleadings and other documents in the record, it is clear that Plaintiffs have good cause to amend their Complaint. Plaintiffs discovered new information during depositions taken

shortly after the deadline for amending pleadings.

Rule 15(a)(2) provides that once a responsive pleading has been filed, a party may amend its pleading only with the opposing party's written consent or the court's leave. Leave of the Court must be freely given when justice requires. *DCD Program v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987). The underlying purpose of Rule 15 is to facilitate a decision on the merits, rather than on the pleadings or technicalities. *Stanton v. Battelle Energy Alliance, LLC.,* 83 F.Supp.3d 937, 948 (D. Idaho 2015). The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) is in the sole discretion of the trial court. *Id.* at 949. The Court is to consider five factors when determining whether leave to amend should be granted: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint.[6] *In re W. State Wholesale Nat. Gas Antitrust Litig.,* 715 F.3d 716, 738 (9th Cir. 2013). The fifth factor, whether plaintiff has previously amended his complaint, is not a factor here. This is Michael Champine's first motion to amend his complaint.

Defendants claim that because Plaintiff knew all of the law enforcement officers and Daniel Skinner prior to the pleading deadline, he cannot now argue that he is acting without bad faith, undue delay, prejudice, or futility. However, simply knowing the identity of particular witnesses does not equate to knowing the facts they can testify to or the documents they have in support of that testimony.

---

[6] Some courts do not include prior amendment of the complaint as a factor, making four factors to consider. *See, e.g., DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *Lemar v. CVS Pharmacy, Inc.,* 2014 WL 12725107 (C.C. Cal. 2014).

MEMORANDUM DECISION AND ORDER - 15

The Ninth circuit has held that prejudice to the opposing party carries the greatest weight on a motion to amend pleadings. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003). The burden to show prejudice lies with the party opposing the motion to amend. *DCD Programs, Ltd.,* 833 F.2d at 186-87. There has been no showing of prejudice. This case is still in its infant stage; deadlines have not expired; and no trial date has been set.

The Court finds leave to amend should be granted in this case. Although the case has been pending for several years, it is still in its early stages. The parties have stipulated to extend the discovery deadlines and there is no evidence of bad faith or undue delay. Moreover, the Court cannot say at this time that it would be futile to amend the claims based on the record as it currently stands. Plaintiff may file his proposed Amended Complaint in this action.

### D. COSTS AND ATTORNEY FEES

Plaintiff Michael Champine seeks his costs and attorney fees associated with the Motion to Compel, pursuant to FRCP 37(b)(5)(A).[7] The necessary meet and confer occurred at the deposition. Rule 37 requires the Court to award reasonable expenses, including attorney fees unless an exception applies. Those exceptions are: (1) the movant filed the motion to compel before attempting in good faith to obtain the disclosure without court action; (2) the opposing party's nondisclosure, response, or objection was

---

[7] Plaintiff's initial Memorandum (Dkt. 51-1) seeks attorney fees and costs under Rule 38(a)(5). Rule 38 governs the right to a jury trial. Rule 38(a)(5) does not exist. Defendant's Objection and Response simply addresses Rule 37(b)(5)(A) without reference to the Plaintiff's miscite. Plaintiff's Reply properly refers to Rule 37(b)(5)(A).

substantially justified; or (3) other circumstances make an award of expenses unjust. Rule 37(a)(5)(A)(i) – (iii). Here, because of Skinner's role as in-house counsel, the attorney-client privilege was very complex and difficult to untangle. The Court cannot say either party acted in bad faith in taking their respective positions. The Court finds that, under the circumstances, an award of expenses that requires Defendants to pay the costs of the continued video deposition of Daniel Skinner and Plaintiff's incurred attorney fees relative to the Motion to Compel is justified. No costs or fees will be awarded to any party for the other three motions. Plaintiff must submit an appropriate invoice.

## IV. CONCLUSION

There is nothing in the record to support that claim that Skinner's investigation was done to give legal advice as opposed to merely finding facts so the Executive Team could determine their course of action. The motion to compel testimony is, therefore GRANTED and the competing motion for protective order is DENIED.

The motion to extend deadlines has been essentially stipulated to and that motion is GRANTED. The motion to amend complaint is also GRANTED for the reasons set forth above.

## V. ORDER

1. Plaintiffs' Motion to Compel Deposition Testimony of Daniel Skinner (Dkt. 51) is GRANTED. Plaintiff Michael Champine is awarded costs for having to re-open the deposition and fees for having to file the motion to compel as explained above.

2. Defendants' Motion to Limit Deposition (Dkt. 54) is DENIED.

3. Plaintiffs' Motion to Modify Scheduling Order (Dkt. 59) is GRANTED. The

   attorneys shall meet and confer to set new deadlines relative to the Scheduling Order. At a minimum, all deadlines shall be after the deposition of Daniel Skinner is completed.

4. Plaintiff Michael Champine's Motion to Amend Complaint (Dkt. 61) is GRANTED. Plaintiff must properly file his proposed Amended Complaint within 14 days of this Order.

DATED: February 11, 2026

_____
David C. Nye
U.S. District Court Judge