Raymond D. Powers, ISB #2737
Portia L. Rauer, ISB #7233
POWERS FARLEY, P.C.
702 W. Idaho St., Suite 700
Boise, ID 83702
Telephone: (208) 577-5100
Email: rdp@powersfarley.com
plr@powersfarley.com

Attorneys for Plaintiff Michael Champine

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL CHAMPINE, individually and on behalf of his minor daughter, I.J.C.,<br><br>Plaintiff,<br><br>vs.<br><br>CHRIS RYAN, an individual, BOISE SCHOOL DISTRICT, DANIEL SKINNER, an individual and DOES I-X, individuals and/or entities of unknown origin,<br><br>Defendants. | Case No. 1:23-CV-00338-DCN<br><br>**PLAINTIFF MICHAEL CHAMPINE'S OPPOSITION TO DEFENDANTS' MOTION FOR RULE 35 EXAMINATION OF PLAINTIFF I.J.C. AND HER PARENTS** |
| MEG CHAMPINE, individually, and as natural legal guardian of the Minor Child, IJC,<br><br>Plaintiff,<br><br>vs.<br><br>BOISE SCHOOL DISTRICT; FAIRMONT JUNIOR HIGH; and CHRISTOPHER RYAN, an individual,<br><br>Defendants. | Case No. 1:23-CV-00436-DCN |

COMES NOW the above-named Plaintiff MICHAEL CHAMPINE, individually and on behalf of his minor daughter, I.J.C., by and through his attorneys of record, Powers Farley, PC,

and respectfully submits this Opposition to Defendants Boise School District, Fairmont Junior High School, and Chris Ryan's Motion for Rule 35 Examination of Plaintiff I.J.C.

## I. INTRODUCTION

Defendants brought this Motion after Plaintiffs repeatedly objected to requiring I.J.C. to undergo what Defendants characterize as an "IME" spanning two consecutive days. Plaintiffs' objections were and are still grounded in legitimate concerns that compelling I.J.C. to again recount the traumatic events and resulting emotional harm underlying this lawsuit would unnecessarily subject her to the risk of additional trauma, while providing Defendants with little, if any, information that cannot otherwise be obtained through less intrusive means of discovery. While Plaintiffs acknowledge Defendants are entitled to challenge the nature and extent of I.J.C.'s claimed injuries, Rule 35 requires more than a desire for an IME from an expert of their choosing. Given the extensive records, testing, and expert opinions already available through discovery production, Plaintiffs believe there is no good cause to require I.J.C. to undergo another examination and revisit the very events underlying this lawsuit.

To be clear, Plaintiffs do not dispute that, given the allegations and damages claimed in this matter, I.J.C.'s physical and mental condition has been placed "in controversy" for purposes of Rule 35. However, satisfying the "in controversy" requirement does not automatically entitle Defendants to subject I.J.C. to a mental examination. Rule 35 imposes a separate and independent requirement that Defendants establish "good cause" by demonstrating a particularized need for the examination and that the information sought cannot adequately be obtained through less intrusive means.

As set forth in greater detail below, Defendants cannot meet that burden. Defendants' own Motion establishes that they already possess the information necessary to evaluate, challenge, and present competing opinions regarding I.J.C.'s claimed injuries. Defendants have access to

Plaintiffs' expert evaluations, I.J.C.'s treatment records, counseling records, and other discovery addressing the very issues they claim require an additional examination. Rather than identifying information unavailable through these existing materials, Defendants seek to conduct an examination ostensibly to acquire the same information already available through the discovery process.

Finally, in their Motion, Defendants claim that the requested Rule 35 examination is directed at Plaintiff I.J.C. and focuses its analysis of the "in controversy" and "good cause" requirements exclusively on I.J.C.'s mental condition. However, buried within Section C of their Memorandum in Support, Defendants reveal that the proposed examination would also include an evaluation of I.J.C.'s parents, who are separate parties to this action. Defendants make no attempt to establish that the mental condition of I.J.C.'s parents is "in controversy," nor do they identify any particularized need or good cause justifying a compulsory examination of them. Accordingly, Defendants have failed to satisfy the threshold requirements of Rule 35 as to I.J.C.'s parents.

As such, given the significant risk of harm associated with unnecessarily requiring I.J.C. to relive her abuse and the emotional trauma stemming from those events, Plaintiffs respectfully request that the Court deny Defendants' Motion. Plaintiffs also request an opportunity orally argue their opposition.

## II. <u>STANDARD OF REVIEW</u>

"Under Rule 35 the party moving for a physical or mental examination must meet two requirements: first, the physical or mental condition of the party must be 'in controversy'; and second, 'good cause' for the examination must be established." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 117–20 (1964)). The movant must do more than provide conclusory allegations of the pleadings or show the examination is relevant to the case; rather, the movant must affirmatively show each condition

as to which examination is sought is "really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf*, 379 U.S. at 117–20 (1964).

"Good cause" generally requires a showing of specific facts justifying discovery. *Crossley v. W. Ada Sch. Dist. #2*, No. 1:24-CV-00106-DCN, 2025 WL 622243, at *2 (D. Idaho Feb. 25, 2025). Factors that courts have considered include, but are not limited to, the possibility of obtaining desired information by other means, whether plaintiff plans to prove his claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress. *Id.*

Even upon a showing of good cause, the Court still has discretion on whether to order an examination. Although the Court must balance the invasion of privacy of the examinee against the moving party's right to a fair trial, the rule should be liberally construed to allow examination. *Id.*

## III. ARGUMENT

### A. Defendants Have Not Shown "Good Cause" as Required Under Rule 35.

Defendants' own Motion demonstrates that good cause does not exist to compel I.J.C. to undergo an additional mental examination, as Defendants acknowledge they already possess and have access to I.J.C.'s existing medical records documenting and addressing her mental health history. Given that Defendants already possess the records, testing, and expert opinions necessary to conduct their own evaluation, the requested examination would serve only to duplicate discovery that has already occurred. Therefore, the requested examination appears less directed toward obtaining unavailable information and more towards intimidating I.J.C. by subjecting her to a damaging, unnecessary, and burdensome additional examination.

Courts throughout the country have consistently recognized that good cause does not exist under Rule 35 where the requested examination would merely duplicate prior examinations, medical records, testing or other discovery already available to the moving party, and the moving

party fails to establish a particularized need showing that an additional examination would produce new or different information. *See Acosta v. Tenneco Oil Co.,* 913 F.2d 205 (5th Cir.1990) (*denying* defendant's motion for an IME because, *inter alia,* defendant sought the same examination as that conducted by the plaintiff); *Melhorn v. New Jersey Transit Rail Operations, Inc.,* 203 F.R.D. 176 (E.D.Pa.2001) (*finding* good cause did not exist because defendant sought to have experts perform the same type of exam without a change in circumstances); *Stewart v. Burlington Northern Railroad Co.,* 162 F.R.D. 349 (D.Minn.1995) (*denying* defendant's motion for IME because the proposed examination of plaintiff would have been no different from the previous examination, which was undertaken at defendant's direction); *Stanislawski v. Upper River Services, Inc.*, 134 F.R.D. 260, 261 (D.Minn.1991) (*finding* good cause under Rule 35 does not exist where defendant had already been provided with ample material upon which expert could base an opinion without personal examination of the defendant); *Soudelier v. Tug Nan Services, Inc.*, 116 F.R.D. 429 (E.D.La.1987) (*finding* good cause under Rule 35 did not exist where the defendant had been allowed access to all of plaintiff's medical records, had been provided with the results of tests performed by the plaintiff's expert, and had the opportunity to conduct discovery).

For guidance, Plaintiffs direct the court to the case of *Winstead v. Lafayette County Board of County Commissioners*, 315 F.R.D. 612 (N.D. Fla. 2016). In *Winstead*, the plaintiffs, Susan Winstead and Deborah Langford, brought an action against their employer where they claim to have suffered mental injuries due to Title VII gender discrimination and sexual orientation discrimination. *Id.* at 614, 616. Specifically, Ms. Winstead claimed to have suffered from depression, anxiety, and insomnia that required ongoing treatment, while Ms. Langford claimed to have developed PTSD as a result of the violations from their employer. *Id.* at 616. The defendant moved to compel the plaintiffs to submit to psychological examinations under Rule 35 of the Federal Rules of Civil Procedure. *Id.* at 613. The plaintiffs opposed the motion, arguing that their

mental states were not "in controversy" and that the defendant failed to establish "good cause" for the examinations. *Id.* at 613-614.

Although the *Winstead* court also address the "in controversy" requirement, the focal point for the purpose of this opposition relates to the court's analysis of the "good cause" requirement. The *Winstead* court found there was insufficient good cause to order the examination because the defendant already had access to relevant medical records and could obtain additional information through traditional discovery methods, including depositions. *Id.* at 616. The court stated:

> "One factor that is relevant to the determination of 'good cause' is the possibility of obtaining the desired information by other means." *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D.Pa.1979) (citing *Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. 234). When the "desired information" is in essence a treating physician/therapist/ psychologist's records and opinions about a party's mental injuries, disclosure of those records and opinions—together with the opportunity to depose the party and perhaps the treater—offers a less intrusive means of obtaining similar (if not the same) information. *Cf. Gavin*, 291 F.R.D. at 165 (finding good cause in part because the plaintiff sought damages for ongoing emotional distress but hadn't been treated for years, so that the defendant could not "depose any of [the plaintiff's] treaters in order to ascertain her continuing emotional distress"); *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296, 298 (W.D.Va.2002) (finding that even if Rule 35 applied to vocational assessments, no good cause existed in part because "Plaintiff has provided Lowe's with a copy of all medical records, a copy of the report from his vocational expert, his tax records, and all other discoverable material requested by Lowe's").

*Id.* The court further emphasized that, because the defendant possessed the plaintiff's relevant medical records and had the ability to explore the claimed emotional injuries through other discovery methods, including depositions of the plaintiff and treatment providers, the defendant failed to establish that a compelled psychological examination was necessary and denied the Rule 35 Motion. *Id.*

Turning to the matter at hand, the reasoning in *Winstead* is particularly applicable to this case, where Defendants seek a two-day psychological examination of I.J.C., who is a victim of

sexual abuse when she was 14 years old. As provided above, Plaintiffs are not asserting that I.J.C.'s mental pain and suffering are not at issue. However, as Defendants' own Motion establishes, there is no "good cause" for additional testing, as they already have all the records necessary to develop I.J.C.'s damages without the need for such an intrusive and unnecessarily redundant examination.

First, Defendants' own Declaration establishes they have all the relevant information that makes an IME unnecessary. As identified in Exhibit A to the *Declaration of Anne S. Magnelli in Support of Defendants Boise School District, Fairmont Junior High School, and Chris Ryan's Motion for Rule 35 Examination of Plaintiff I.J.C.* (hereinafter "Magnelli Decl."), Defendants have the Plaintiffs' joint expert disclosures, which provides the opinions of Plaintiffs' experts, but more pointedly, the records they relied upon in forming those opinions.

Identified in the joint expert witness disclosure as retained expert witnesses are Anique Whitmore - a psychotherapist, and Alana Bomberg - a rehabilitation counselor, vocational expert, and life care planner. *Id.* at ¶ 2, Ex. A. The disclosure includes a section identifying the materials that every expert reviewed in forming their opinions, which included the relevant Bate stamp of those documents. *Id.* The disclosure identifies that Ms. Whitmore and Ms. Bomberg reviewed, *inter alia*, the CARES psychological Assessment conducted on I.J.C., I.J.C.'s counseling notes from Ms. Maribeth Horan, with Treasure Valley Counseling and Associates, the neurocognitive evaluation performed by Dr. Allison Etnyre, and the child sexual grooming report prepared by Dr. James Davison, which were all provided through discovery.

The expert disclosure also includes information regarding non-retained experts in Ms. Horan, Dr. Etnyre, Dr. Davidson, the providers in Full Circle Health, providers in St. Luke's CARES, and every other provider at St. Luke's that have some knowledge regarding I.J.C.'s condition.

Defendants further acknowledge that Dr. Etnyre conducted a "lengthy clinical interview" of Plaintiff, in addition to three separate evaluation sessions involving academic and neurocognitive testing. *Id.* at ¶ 3. Defendants further admit that they have the necessary information regarding I.J.C.'s cognitive functions as well as the report from psychotherapist Anique Whitmore. *Id.* at ¶¶ 4-6.

Defendants have been in possession of this disclosure since November 3, 2025, and had every opportunity to have their own experts review the same records, depose the providers, counselors, and experts identified in the report, and question them regarding their records, but they have not done so. Of further note, the deadline for Defendants to disclose their expert witnesses remains open and they have sufficient time to conduct such discovery. Yet, despite having the necessary records and despite having ample time to conduct discovery, Defendants claim good cause exists to order an intrusive IME simply because a I.J.C.'s mental condition is at issue. That is not good cause.

Secondly, and more importantly, Defendants' Motion does not seek a new examination, rather it seeks to repeat an evaluation already performed. Defendants claim the same examination is necessary to evaluate I.J.C.'s cognitive functioning, memory, behavioral concerns, and possible alternative causes for Plaintiff's symptoms. However, Defendants already have access to the relevant medical records and have the ability to use alternative discovery means in which to evaluate these claims. I.J.C.'s cognitive functions, memory, and behavior concerns are all issues already disclosed through Dr. Etnyre's report. Determining "possible alternative causes" of her symptoms does not require undergoing the same examination and instead can be determined through depositions of Plaintiffs' experts, non-retained experts, and I.J.C.'s treatment providers.

Requiring I.J.C. to undergo a duplicative examination despite the availability of less intrusive alternatives is an abuse of the Rule 35 examination process. Defendants should not be

permitted to subject I.J.C. to a two-day mental examination requiring her to revisit the abuse she suffered while a student at Fairmont Junior High when Defendants already possess the tools necessary to evaluate and challenge her claimed injuries. Defendants remain free to review the existing evaluations, analyze I.J.C.'s treatment records, depose Plaintiffs' experts and treatment providers, and offer competing expert opinions. Rather than identifying information that cannot be obtained through these available methods, Defendants seek to repeat testing and evaluations that have already occurred. Such a request does not establish good cause under Rule 35 and unnecessarily burdens an alleged victim of childhood sexual abuse.

Having failed to show they cannot obtain the requested information through less intrusive means, Plaintiffs respectfully ask the court find Defendants have failed to establish "good cause" and deny the Motion.

**B. <u>The Court Should Exercise Its Discretion to Deny Defendants' Rule 35 Motion Because the Requested Examination is Unnecessarily Intrusive and Cumulative</u>.**

Given the allegations at issue, Plaintiffs respectfully ask the Court to exercise its discretion in this matter and deny Defendants' Rule 35 Motion. Again, for guidance, we direct the Court to the *Winstead* decision. After finding that defendants failed to meet their burden to demonstrate "good cause" under Rule 35, the *Winstead* court went further and explained how denial of the request was an appropriate use of the court's discretion even if "good cause" existed. *Winstead*, 315 F.R.D. at 617. The court stated:

> There are two reasons for this. First, there are the policy concerns discussed earlier that are somewhat unique to the employment context. There is a distinct danger of Rule 35 being used as a sort of retaliatory measure, and that danger counsels in favor of granting Rule 35 motions sparingly given the policies underlying Title VII and similar statutes.
> Second, there is the fact that the tests the County wishes Plaintiffs to undergo are "objective" only in a narrow sense, and not totally analogous to most *physical* examinations. "Psychological tests, even so-called objective psychological tests such as the MMPI, are not

> objective in the same sense that bio-medical tests are objective. The MMPI is scored entirely on the patient's self report. If a person claims to be depressed and answers as 'true' MMPI questions asking whether he or she is unhappy or cries all the time, the MMPI will report that the person is depressed." Ansar M. Haroun & Grant H. Morris, *Weaving a Tangled Web: The Deceptions of Psychiatrists*, 10 J. Contemp. Legal Issues 227, 238 (1999). Unlike, say, a physical injury stemming from a car crash, a plaintiff's claim of some emotional harm is not easily confirmed or disconfirmed by subjecting that plaintiff to an examination. This is not to say that psychological examinations such as the MMPI have *no* probative value in a case such as this one, but their relatively limited probative value counsels in favor of denying Rule 35 motions for psychological exams. If a party thinks the opposing party is exaggerating the extent of her mental injuries, rigorous questioning at a deposition and scrutiny of medical records seems at least as good a way of confirming that suspicion as a quasi-objective psychological exam.

*Id.*

With the case at hand, Plaintiffs ask the Court deny the Motion for the very same reasons identified by the court in *Winstead*. First, Plaintiffs' claims center around allegations that I.J.C. was sexually abused by a school staff member while entrusted to the care of Fairmont Junior High. The allegations involve the serious and traumatic experience of childhood sexual abuse, and any request requiring I.J.C. to again discuss and revisit those events must be carefully considered.

As courts have recognized, mental examinations present unique concerns because the exams "are particularly sensitive (usually more so than physical examinations), both because of the very different (and lesser) degree of objectivity that they are typically able to provide and because of the special dangers of intrusiveness that they present." *Jansen v. Packaging Corp. of Am.*, 158 F.R.D. 409, 410 (N.D. Ill. 1994) (parenthetical original). The law further recognizes the need to afford victims of abuse certain protections and safeguards to prevent unnecessary additional harm. *See* 18 U.S.C. § 3771(a)(1) and (8) ("A crime victim has the following rights: (1) The right to be reasonably protected from the accused. . . . (8) The right to be treated with

fairness and with respect for the victim's dignity and privacy."). As such, requiring I.J.C. to undergo additional medical examinations, particularly when there are already less intrusive means in which Defendants can obtain such information, would subject her to further harm as she will be required to retell her abuse to strangers but this time with the knowledge that they seek to discredit the pain she has suffered.

Secondly, given that Defendants' request duplicative examination, given that there is ample, less intrusive, means to further develop I.J.C.'s mental injuries, and given the nature of such a mental exam, ordering an examination under Rule 35 is unnecessary. Defendants can develop all the information they identified in their memorandum in support of their Motion through a deposition of I.J.C.'s treatment providers as well as Plaintiffs' experts and such a process would alleviate any need to subject I.J.C. to a highly intrusive two-day examination.

Therefore, given the potential harm I.J.C. may suffer through additional testing and given the readily available alternative means in which Defendants can obtain all necessary information, Plaintiffs respectfully ask the Court deny Defendants' Rule 35 Motion.

### C. <u>Defendants Have Failed to Meet Their Burden as it Pertains to Requesting an IME for Michael and Meg Champine.</u>

Finally, Defendants improperly encompass Plaintiffs Michael Champine and Meg Champine into their Rule 35 Motion without any justification for such an examination. Although Defendants argued that I.J.C.'s mental and physical conditions were at issue and sparsely argued good-cause existed for ordering her examination, and even title their Motion "DEFENDANTS BOISE SCHOOL DISTRICT, FAIRMONT JUNIOR HIGH SCHOOL AND CHRIS RYAN'S MOTION FOR RULE 35 EXAMINATION OF PLAINTIFF I.J.C.;" they argue in Section C(i)(3) that the mental examination would include a two hour examination of I.J.C.'s parents. This request goes beyond the permissible scope of Rule 35, as I.J.C.'s parents are also Plaintiffs in this matter.

As provided above, Rule 35, states, in relevant part, "The court where the action is pending may order *a party whose mental or physical condition*--including blood group--*is in controversy* to submit to a physical or mental examination by a suitably licensed or certified examiner." *Fed. R. Civ. P.* 35(a)(1). Again, "the party moving for a physical or mental examination must meet two requirements: first, the physical or mental condition *of the party* must be 'in controversy'; and second, 'good cause' for the examination must be established." *Ragge*, 165 F.R.D. at 608 (emphasis added).

In their memorandum, Defendants have made absolutely no argument as to whether the mental or physical conditions of Michael Champine or Meg Champine are at issue in this case or whether good-cause existed for their examination under Rule 35. In failing to establish these necessary elements, it would be improper to grant the Motion and force Plaintiffs Michael and Meg Champine to submit to the examination.

Given that Defendants provide no legal or factual argument to establish that an examination of Plaintiffs Michael and Meg Champine are necessary or that good cause exists for such an examination, Plaintiffs respectfully ask the Court deny the Motion.

**D. <u>In the Alternative, Any Examination Ordered by the Court Should Be Narrowly Tailored and Limited in Scope and Duration</u>**

Plaintiffs firmly believe that Defendants' Motion should be denied in its entirety. However, should the Court determine that Defendants are entitled to conduct any additional examination of I.J.C., Plaintiffs respectfully request that the examination be narrowly tailored and limited in scope.

As identified in the Plaintiffs' joint expert witness disclosure, Mrs. Whitmore, Plaintiffs' retained expert psychotherapist, conducted three one-on-one interviews with I.J.C. *Magnelli Decl.* at ¶ 2, Ex. A. Plaintiffs represent that each of those interviews lasted approximately one hour, resulting in a total of approximately three hours of direct evaluation. Given that Mrs. Whitmore

was able to complete her assessment of I.J.C. within that timeframe, Defendants cannot demonstrate a need for an examination exceeding the scope and duration of the evaluation already performed. This is especially true considering the significant concerns associated with requiring I.J.C. to unnecessarily recount the traumatic events underlying this lawsuit. As such, should the Court permit any additional examination, Plaintiffs respectfully request that it be limited to no more than three hours to minimize the unnecessary burden and potential harm to I.J.C.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court find Defendants have failed to establish the requisite "good cause" necessary to compel an examination under Rule 35. Plaintiffs further request that the Court exercise its discretion and deny Defendants' Motion because the information sought is already available through other less intrusive discovery methods. Plaintiffs also request an oral argument to further explain their opposition.

DATED this 25th day of June, 2026.

POWERS FARLEY, PC

By /s/ Raymond D. Powers
Raymond D. Powers – Of the Firm
Portia L. Rauer – Of the Firm
Attorneys for Plaintiff Michael Champine

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 25th day of June, 2026, the foregoing document was electronically filed with the U.S. District Court. Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System:

Anne S. Magnelli
Nicole M. Jenkins
Attorneys for Defendants
Chris Ryan and Boise School District
amagnelli@ajhlaw.com
njenkins@ajhlaw.com

Eric S. Rossman
Mallam J. Prior
Attorneys for Plaintiff Meg Champine
erossman@rossmanlaw.com
mprior@rossmanlaw.com

Andrea J. Rosholt
Attorneys for Plaintiff Meg Champine
andrea@rosholtlaw.com

Bruce Castleton
Attorneys for Defendant Daniel Skinner
bcastleton@castletonlegal.com

/s/ Raymond D. Powers
Raymond D. Powers
Portia L. Rauer