UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL CHAMPINE, individually and on behalf of his minor daughter, I.J.C.<br><br>Plaintiff,<br><br>v.<br><br>CHRIS RYAN, an individual, BOISE SCHOOL DISTRICT, and DOES I-X, individuals and/or entities of unknown origin,<br><br>Defendants.<br><br>MEG CHAMPINE, individually, and as natural legal guardian for the Minor Child Plaintiff, IJC,<br><br>Plaintiff,<br><br>v.<br><br>BOISE SCHOOL DISTRICT; FAIRMONT JUNIOR HIGH, and CHRISTOPHER RYAN and DOES I-X, individuals and/or entities of unknown origin,<br><br>Defendants. | Case No. 1:23-cv-00338-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Boise School District's Motion for Rule 35

Examination of Plaintiff I.J.C. Dkt. 90. Plaintiffs oppose the Motion. Dkt. 95. Upon review,

MEMORANDUM DECISION AND ORDER - 1

and for the reasons set forth below, the Motion is GRANTED.[1]

## II. BACKGROUND

Plaintiff I.J.C. attended Fairmont Junior High while she was between the ages of 13 and 14. While at Fairmont, Plaintiffs allege a social worker, Scott Crandell, provided counseling services to I.J.C. and eventually engaged in a sexually abusive relationship with I.J.C. Plaintiffs further allege that Chris Ryan, principal at Fairmont, received reports of Crandell's inappropriate behavior against I.J.C. but failed to take appropriate action.

On December 12, 2022, the Boise Police Department received an anonymous tip that Crandell was having an inappropriate and possibly sexual relationship with I.J.C. At that point, Plaintiffs allege Ryan told Crandell to stay away from I.J.C. Five days after the anonymous tip, Crandell committed suicide.

Plaintiffs subsequently filed suit asserting various causes of action and seek damages for the physical, mental, and emotional harm I.J.C. experienced.

As part of discovery in this case, certain medical reports or documents have already been produced regarding I.J.C.'s general health and wellbeing. For example, Plaintiffs have turned over clinical notes and counseling notes, as well as psychological and neurocognitive reports and evaluations. At least one Doctor—Dr. Etnyer—conducted a clinical interview of I.J.C. which has been provided to Defendants.

In the fall of 2025, Defendants began the process of scheduling an exam of I.J.C. pursuant to Rule 35 of the Federal Rules of Civil Procedure. At that time, Plaintiffs

---

[1] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. R. 7.1(e)(1)(B).

MEMORANDUM DECISION AND ORDER - 2

objected, and the parties brought the issue to the Court informally. The Court informed the parties that a Rule 35 exam seemed necessary under the circumstances and the Parties discussed various parameters and options for proceeding. As part of that process, Plaintiffs' counsel suggested waiting until after I.J.C. graduated from high school to lessen the stress of any Rule 35 exam. The Court and the parties agreed to wait until the summer of 2026— after I.J.C.'s graduation—to finalize the matter.

Following her graduation,[2] Defendants again sought to schedule a Rule 35 medical exam for I.J.C. Plaintiffs reiterated their prior concerns and affirmatively objected to any exam. Defendants filed the instant motion.

### III. LEGAL STANDARD

"Under Rule 35 the party moving for a physical or mental examination must meet two requirements: first, the physical or mental condition of the party must be 'in controversy'; and second, 'good cause' for the examination must be established." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 117–20 (1964)). The movant must do more than provide conclusory allegations or show the examination is relevant to the case; rather, the movant must affirmatively show each condition as to which examination is sought is "really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf*, 379 U.S. at 117–20.

---

[2] As an aside, the Court is not aware of I.J.C.'s exact age at this time. There *may* be a need to discuss whether I.J.C. has reached the age of majority and how that affects the party plaintiffs moving forward. The Court assumes this is on the Parties' radar and they will update the Court as necessary.

"Good cause" generally requires a showing of specific facts justifying discovery. *Crossley v. W. Ada Sch. Dist. #2*, 2025 WL 622243, at *2 (D. Idaho Feb. 25, 2025). Factors that courts have considered include, but are not limited to, the possibility of obtaining desired information by other means, whether plaintiff plans to prove his claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress. *Id*. Even upon a showing of good cause, the Court still has discretion on whether to order an examination. Although the Court must balance the invasion of privacy of the examinee against the moving party's right to a fair trial, the rule should be liberally construed to allow examination. *See id*.

"A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf*, 379 U.S. at 119.

## IV. ANALYSIS

Plaintiffs readily admit I.J.C.'s "physical and mental condition has been placed in controversy for purposes of Rule 35." Dkt. 95, at 2. They contend, however, that Defendants should not be able to engage in a wide-ranging exam of I.J.C.—particularly in light of her emotional and fragile state. They also argue Defendants already have sufficient information to mount a defense and do not need to examine I.J.C. further.

First, as for I.J.C.'s mental state, the Court (and Defendants) appreciate the delicate nature of the allegations involved in this case. That was the basis for the extended continuance of this issue—waiting until I.J.C. graduated from high school to lessen the

MEMORANDUM DECISION AND ORDER - 4

overall stress associated with any exam. But the fact remains I.J.C.'s mental, physical, and emotional state is one of the central issues in this case, if not *the* central issue. It would be fundamentally unfair to foreclose Defendants from an opportunity to examine I.J.C. even if it is somewhat stressful for her.

The Court has reviewed Defendants' proposals for the examination as well as Plaintiffs' objections. Candidly, the Court feels Defendants have made a commendable effort to accommodate Plaintiffs' concerns and decrease any stress she may experience— to the extent possible. The duration, location, and other procedural aspects of the exam have been altered to be as comfortable for I.J.C. as possible while still providing Defendants with the opportunity to complete their due diligence and represent their client to the fullest. The Court finds the parameters suggested by Defendants are sufficiently tailored and acceptable under the circumstances. Likewise, the Court finds the proposed scope of the evaluation to be acceptable under the circumstances and in line with the allegations of the operative complaint.[3]

Upon review, the Court finds Defendants have shown sufficient good cause for the examination because, while they possess some of I.J.C.'s medical records, they cannot test those findings without an examination of their own. Rule 35 does not prohibit multiple examinations, nor does it mandate that one side must accept what the other side has provided. What's more, there does not appear to be any less intrusive means to get the

---

[3] It appears there was some confusion about whether I.J.C.'s parents—Michael and Meg Champine—who are named Plaintiffs, would also be subject to an examination. Defendants have clarified that, at this time, they are not seeking to examine Michael or Meg; rather, they want to gather information from them relative to I.J.C.'s history and health. This is permissible.

MEMORANDUM DECISION AND ORDER - 5

information they seek. And Defendants have made reasonable efforts to mitigate any intrusion I.J.C. may experience.

For these reasons, the Court GRANTS the Motion and orders a Rule 35 examination of I.J.C.

## V. ORDER

The Court **HEREBY ORDERS**:

1.  Defendants' Motion for Rule 35 Exam of Plaintiff I.J.C. (Dkt. 90) is GRANTED.

DATED: July 6, 2026

_____
David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 6